UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
SALLIE BURCH,

                            Plaintiff,

          -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, DEPUTY COMMISSIONER NELDRA
ZIEGLER, sued in her official and personal capacity,
SERGEANT DEL-VALLE, sued in her official and personal
capacity, C.O. WALTER SALOWSKI, sued in his official and
personal capacity, DEPUTY INSPECTOR SAMUEL
WRIGHT, sued in his official and personal capacity,
LIEUTENANT LORENZO WORMACK, sued in his official
and personal capacity, LIEUTENANT KIMBALL, sued in his
official and personal capacity, SERGEANT CATHERINE
FELIPE, sued in her official and personal capacity,
SERGEANT ICO DEBRA LESLIE, sued in her official and
personal capacity, SERGEANT NANCY BELINGIRI, sued in
her official and personal capacity, and AI VANESSA PEET,
sued in her official and personal capacity,

                          Defendants.
--------------------------------------------------------------------------X

**AMENDED COMPLAINT
WITH JURY DEMAND**

Docket No.
 11-CV-3274 (LDW)(VMS)

       The Plaintiff, SALLIE BURCH, by and through her attorneys, the law firm of CRONIN &

BYCZEK, LLP, as and for her Amended Complaint against Defendants, THE CITY OF NEW

YORK, NEW YORK CITY POLICE DEPARTMENT, DEPUTY COMMISSIONER NELDRA

ZIEGLER, SERGEANT DEL-VALLE, C.O. WALTER SALOWSKI, DEPUTY INSPECTOR

SAMUEL WRIGHT, LIEUTENANT LORENZO WORMACK, LIEUTENANT KIMBALL,

SERGEANT CATHERINE FELIPE, SERGEANT ICO DEBRA LESLIE, SERGEANT NANCY

BELINGIRI, and AI VANESSA PEET, sued in their official and personal capacities, respectfully

sets forth the following:

## INTRODUCTION

1.     This is an action is hereby commenced for the purpose of seeking to secure protection of, and to redress the deprivation of, rights secured by the United States Constitution, TITLE VII of the Civil Rights Act of 1964,  the Civil Rights Act of  § 1983, The New York State Executive Law § 296 and New York City Human Rights Law § 8-107, et. seq. for relief based upon Defendants' unlawful employment practices of engaging in discrimination based upon Plaintiff's sex, disability, and for the creation of a hostile work environment and retaliation against Plaintiff for engaging in the protected activity of formally complaining of said discrimination.

## JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

    a.  Title VII of the Civil Rights Act of 1964 (hereinafter referred to as "Title VII") providing for injunctive and other relief against discrimination in employment on the basis of sex;

    b.  USERRA for injunctive and other relief against discrimination;

    c.  In employment on the basis of military service; and

    d.  Civil Rights Act of 1964 42 USC §1983.

3.     The unlawful employment practices, violations of Plaintiff's civil rights and tortuous acts complained of herein were committed within the Eastern and Southern Districts of New York.

4.     The pendent jurisdiction of the federal district court is invoked with respect to the Plaintiff's claims under New York State Executive Law § 296 and New York City Administrative

Code § 8-502, pursuant to 28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the Plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PLAINTIFF

5.     Plaintiff, SALLIE BURCH (hereinafter referred to as "Plaintiff"), is a female citizen of the United States of America and is over twenty-one (21) years of age, a resident of Brooklyn, New York and is an employee of Defendant, THE CITY OF NEW YORK (hereinafter referred to as the "CITY"), more specifically the Defendant, NEW YORK CITY POLICE DEPARTMENT (hereinafter referred to as the "NYPD").  For the purposes of this litigation, Defendant, THE CITY OF NEW YORK, may be hereinafter identified interchangeably using "CITY" or "NYPD."

## DEFENDANTS

6.     Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times was Plaintiff's employer, with its central offices in the County of New York, and diverse other offices and facilities throughout the world.

7.     Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 2000(e), employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

8.     Defendant NYPD was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times was Plaintiff's employer, with its central offices in the County of New York, and diverse other offices and facilities

throughout the world.

9.     Defendant NYPD is an employer within the definitions contained in 42 U.S.C. § 2000(e), employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

10.    Defendant, Deputy Commissioner Neldra Zeigler (hereinafter referred to as "Ziegler"), was the Deputy Commissioner of the NYPD EEO during the relevant time period. Ziegler is sued in her official and personal capacity.

11.    Defendant, Sergeant Del-Valle (hereinafter referred to as "Del-Valle"), was assigned to the NYPD EEO during the relevant time period.  Del-Valle is sued in her official and personal capacity.

12.    Defendant, C.O. Walter Salowski (hereinafter referred to as "Salowski"), was the Commanding Officer of the Applicant Processing Division during the relevant time period. Salowski is sued in his official and personal capacity.

13.    Defendant, Deputy Inspector Samuel Wright (hereinafter referred to as "Wright"), was a Deputy Inspector in the Applicant Processing Division during the relevant time period. Wright is sued in his official and personal capacity.

14.    Defendant, Lieutenant Lorenzo Wormack (hereinafter referred to as "Wormack"), was a Lieutenant in the Applicant Processing Division during the relevant time period.   Wormack is sued in his official and personal capacity.

15.    Defendant, Lieutenant Kimball (hereinafter referred to as "Kimball"), was a Lieutenant in the Applicant Processing Division during the relevant time period.  Kimball is sued in his official and personal capacity.

16.    Defendant, Sergeant Catherine Felipe (hereinafter referred to as "Felipe"), was a

Sergeant in the Applicant Processing Division during the relevant time period. Felipe is sued in her official and personal capacity.

17.     Defendant, Sergeant ICO Debra Leslie (hereinafter referred to as "Leslie"), was a Sergeant in the Applicant Processing Division during the relevant time period. Leslie is sued in her official and personal capacity.

18.     Defendant, Sergeant Nancy Belingiri (hereinafter referred to as "Belingiri"), was a Sergeant in the Applicant Processing Division during the relevant time period. Belingiri is sued in her official and personal capacity.

19.     Defendant, AI Vanessa Peet (hereinafter referred to as "Peet"), was an AI in the Applicant Processing Division during the relevant time period. Peet is sued in her official and personal capacity.

## PROCEDURAL REQUIREMENTS

20.     Plaintiff has filed suit with this Court within the applicable statute of limitations period.

21.     On or about September 4, 2009, Plaintiff sought assistance from the United States Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC").

22.     On or about September, 2010, Plaintiff received a Dismissal and Notice of Right to Sue from the United States Department of Justice.

## FACTS UNDERLYING PLAINTIFF'S COMPLAINT

23.     Plaintiff is a female and has been employed as a Police Officer with the NYPD since 1992. Plaintiff has been assigned to the Applicant Processing Division since 1997. All

relevant incidents take place while Plaintiff was assigned to the Unit III of the Applicant Processing Division.

24.     Plaintiff was on military leave between December 2003 and January 2005 and sustained injuries while serving in Operation Iraqi Freedom.

25.     On or about April 2008, pursuant to USERRA, New York State and New York City law, Plaintiff made a request for reasonable accommodation for the service connected injuries she sustained during Operation Iraqi Freedom.  Plaintiff followed the process of submission for requests for reasonable accommodation as detailed in the NYPD Patrol Guide. Plaintiff submitted a request for reasonable accommodation to Defendant Felipe who refused to accept it and process it.  As a direct result of Defendant Felipe's failure to follow the NYPD Patrol Guide and properly process Plaintiff's request for reasonable accommodation, Plaintiff felt discouraged and did not pursue the matter until September 2008 when her condition worsened to the point that she could not wait any longer.  Not only did Defendant Felipe not try to accommodate Plaintiff, but she would purposely assign Plaintiff to outside details which were more arduous to Plaintiff's health then her inside assignment details.  Plaintiff submitted the request to the Executive Office of the Applicant Processing Division, Defendant Wright, who refused to reasonably accommodate Plaintiff.  Defendants Salowski and Wormack also refused to reasonably accommodate Plaintiff.

26.     On or about the end of December 2008, Plaintiff complained to Defendants Felipe and Peet that she was being discriminated against and being subjected to a hostile work environment and harassment by co-workers.  Although the  NYPD Patrol Guide mandates that supervisors report all complaints of discrimination and hostile work environment, Defendants Felipe and Peet failed to report Plaintiff's complaints.

27.    Plaintiff alleges that she was harassed by Defendants Peet and Felipe, after complaining to them about allowing a civilian inspector to make false entries when signing in, in essence stealing time.  When Plaintiff complained to Defendant Peet, she was told by Defendant Peet that, as a supervisor, she Peet could do what she wanted.  When Plaintiff complained to Defendant Felipe, Felipe impliedly admitted she was aware of the wrongdoing but did nothing to stop it, thereby tolerating and condoning the activities.

28.    On or about October 2008, Plaintiff overheard two civilian inspectors openly discussing her private USERRA, New State and New York City Law request for reasonable accommodation.  Plaintiff complained to Defendants Belingiri and Felipe.  Defendants Belingiri and Felipe failed to investigate or report this violation of USERRA rights and her privacy rights under New York State and City Law.

29.    On or about October 2008, Plaintiff, in violation of USERRA and New York State and City Laws, was denied her request for reasonable accommodation.  The named Defendants and the NYPD refused to engage in the interactive process and refused to accommodate Plaintiff.  Instead, Plaintiff was referred to the NYPD Medical Division.

30.    Plaintiff was subjected to a continuous pattern of harassment and hostile work environment by co-workers, which was tolerated and condoned by Defendants, and included, but was not limited to:  on or about October 22, 2008, Plaintiff discovered that the wire to her cell phone charger, which she left on her desk at all times, was stripped; on or about February 25, 2009. an empty box was placed on Plaintiff's desk with an open vacancy notice for other positions within the Applicant Processing Division; on or about March 11, 2009, Plaintiff's private refrigerator was vandalized by purposely being turned off and filled with water; on or about March 26, 2009, Plaintiff's cell phone was again broken, the tip was intentionally broken

off; on or about June 11, 2009, Plaintiff left her keys near the sign in book right across from Defendant Felipe's cubicle and when she returned to retrieve them, Plaintiff discovered that the alarm remote for her car was intentionally damaged, Plaintiff reported this incident to the NYPD Internal Affairs Bureau under IAB Log # 09-298-880; on or about June 14, 2009, Plaintiff's personal chair, which she provided for the use of applicant candidates, was vandalized, and on June 15, 2009, Plaintiff reported this to IAB; and on or about August 12, 2009, the arm of the chair that Plaintiff routinely sits in was vandalized.   Defendants Kimball, Felipe, Leslie, Belingiri, and Peet failed to take any corrective action to protect Plaintiff and/or discipline the offenders.

31.     On or about February 2009, Defendant Felipe informed Plaintiff that in response to her request for reasonable accommodation she was going to be offered the position of security desk with a change of regular days off, which meant Plaintiff would be working weekends, Plaintiff would be assigned to administration, come out of the rotation for regular cases, take all of the Brooklyn walk-ins and close out her caseload.  Plaintiff had processed civilian applicants since 1997 and the alleged accommodation would significantly increase her workload and drastically alter the terms and conditions of her employment.  Plaintiff indicated to Defendant Felipe that this was a punishment rather than an accommodation.

32.     On March 11, 2009, after making a complaint about noise by co-workers, Plaintiff received an anonymous note inside of an NYPD postage paid reply envelope.  The contents of the note reads as follows:

**"U R A FAT MISABLE BITCH, U MAKE UR WHOLE UNIT TOO PPL ALMOST FEEL SORRY 4 U. EVERYBODY WISH U WLD JUST RETIRE. SO U CAN GET LAYED. U R A RAT BITCH 2. U TELL EVERYTHING BUT WHAT ABOUT WHAT U DO. IF YOU GET SUM DICK U WLD FEEL A LOT BETTER …… FROM SUM ONE FAR BUT CLOSE TO U ……. OR I CLD B CLOSE AND YET FAR FROM U …….. JUST TAKE NOTE"**

Plaintiff gave a copy of the letter to Defendant Leslie and was told that she would take care of it. Plaintiff also left a copy of the letter on Defendant Felipe's desk. When Plaintiff questioned Felipe about the letter, Felipe responded in a hostile and negative manner, and appeared angry that Plaintiff reported this to her. A report of Plaintiff's complaint regarding the note was made to the NYPD EEO which informed Plaintiff, on April 9, 2009, that she was not subjected to discrimination.

33.     Plaintiff alleges that Defendants Ziegler and Del-Valle failed to properly investigate Plaintiff's complaints thereby tolerating and condoning this act of sexual harassment. Plaintiff was never even interviewed with regard to this complaint.

34.     On or about March 13, 2009, Defendants Felipe and Leslie held a meeting with members of Unit III regarding the note left in Plaintiff's mailbox. Defendant Felipe ostensibly made some rule changes as a result of the note, including: employees could not wear sneakers or jeans to work; could not eat at their desks and were required to go down to the cafeteria to eat; and no company was allowed in the cubicles.

35.     Plaintiff was subjected to repeated retaliation for complaining about the note. Her private property, a refrigerator, was vandalized on or about March 11, 2009 by purposely being turned off and filled with water; on or about March 26, 2009, Plaintiff's cell phone was again broken, the tip was intentionally broken off; on or about June 11, 2009, Plaintiff left her keys near the sign in book right across from Defendant Felipe's cubicle when she returned to retrieve

them Plaintiff discovered that the alarm remote for her car was intentionally damaged, Plaintiff reported this incident to the NYPD Internal Affairs Bureau under IAB Log # 09-298-880; on or about June 14, 2009, Plaintiff's personal chair which she provided for the use of applicant candidates was vandalized, on June 15, 2009 Plaintiff reported this to IAB; on or about August 12, 2009, the arm of the chair that Plaintiff routinely sits in was vandalized.  Defendants Salowski, Wright, Wormack, Kimball, Felipe, Leslie, Belingiri, and Peet did nothing to protect Plaintiff's property or investigate these incidents thereby tolerating and condoning these impermissible actions.

36.    Plaintiff was subjected to unfair scrutiny and retaliation by Defendants for complaining about the note in that the "new rules" set by Defendant Felipe in response to the note received by Plaintiff was selectively enforced only against Plaintiff.  On March 18, 2009, Plaintiff signed in at a ½ early for her tour.  Plaintiff had just left the Veterans Medical Center where she could not undergo therapy because of her blood pressure.  She was advised by medical personnel to get something to eat, take medication with the food and go home and rest.  Instead, Plaintiff reported to work because she had candidates to interview.  She informed Defendant Felipe of what occurred at the hospital and the medical advice that she was given.  At about 12:15, Plaintiff went to an empty cubicle so that she could eat and take her medication with the food.  Even though it was too early for Plaintiff to sign out for a meal, she had to take the medication with food.  Either co-worker CI McKinney or CI Boone, observed Plaintiff eating and reported it to Defendant Felipe.  Defendant Felipe, fully aware that Plaintiff had to take medication with food and that it was to early for Plaintiff to sign out for a meal break to go to the cafeteria, refused to accommodate Plaintiff's disability and enforced the no eating rule against Plaintiff.  Plaintiff had to cease eating and return to her desk.

37.    These "new rules" set by Defendant Felipe were not enforced against the following: on March 19, 2009 and March 30, 2009  Defendant Felipe was eating at her desk; CI Sparks ate trail mix daily at his desk; CI Scott ate at her desk; on March 26, 2009, AI Ganese had company in his cubicle for over an hour which was observed by AI Peet; on April 23, 2009, CIs Scott and Sparks, ate at their desks while interviewing candidates; on April 24, 2009, CI Scott ate fruit at her desk and AI Powell ate breakfast and read a newspaper; On May 6 and May 7, 2009, CI Scott wore sneakers; and on May 7, 2009, CI Boone wore jeans.  The "rules" set by Defendant Felipe were not enforced against any of these co-workers.

38.    On or about April 26, Plaintiff was subjected to retaliation by Defendant Kimball when he attempted to punitively transfer Plaintiff to Queens or another unit in the building. Plaintiff did not want to be transferred as her many medical appointments, due to active duty related injuries, were located near her work site and she expressed that she was doing civilian cases since 1997 and enjoyed her work.  Defendant Kimball refused to take any corrective action or transfer any of the harassers against Plaintiff that were subjecting Plaintiff to discrimination based upon her sex, retaliating against Plaintiff and were creating, tolerating and/or condoning the hostile work environment.

39.    Plaintiff was subjected to repeated attitudes, comments and remarks from her co-workers based upon her sex which was tolerated and condoned by Defendants Salowski, Wright, Wormack, Kimball, Felipe, Leslie, Belingiri, and Peet and which had an adverse effect upon the terms and conditions of Plaintiff's employment.  These included but were not limited to: comments made by co-workers to the effect that "it smells in here" when Plaintiff entered the room; co-workers informed other employees that Plaintiff's last name was "rat; Plaintiff was humiliated by co-workers who compared her to an obese candidate remarking that Plaintiff

looked like the candidate; and co-workers made negative comments when Plaintiff entered the room.

40.    These aforementioned acts have caused Plaintiff tremendous personal anxiety, health concerns, personal and professional embarrassment, have damaged her professional reputation and have hindered and impacted her present and future ability to earn a living.

41.    As a result of these aforementioned acts Plaintiff has suffered, economic, physical, emotional and mental damages.

## AS AND FOR A FIRST CAUSE OF ACTION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

42.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 41 with the same force and effect as if fully set forth herein.

43.    Based upon the aforementioned facts, Defendants discriminated against Plaintiff as a result of her sex and in retaliation for engaging in protected activity.

44.    Defendants intentionally and willfully discriminated against and harassed Plaintiff and permitted Plaintiff to be discriminated against and harassed in her employment on account of her sex and in retaliation for opposition to discrimination thereby violating § 704(A) of TITLE VII of the Civil Rights Act of 1964 as amended and 42 USC § 2000e-3(a).

45.    Defendants tolerated, condoned and engaged in harassment of Plaintiff, thereby creating and subjecting Plaintiff to a hostile work environment.

46.    As a result of the Defendants' conduct, Plaintiff has suffered economic loss, pain, humiliation, embarrassment, extreme emotional distress and continues to suffer to this day, and further as a result of Defendants' conduct, Plaintiff has suffered both professionally and

personally.

47.    As a result of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).  Additionally, Plaintiff seeks punitive and exemplary damages in the sum of FIVE MILLION DOLLARS ($5,000,000.00) against the individual Defendants.

## AS AND FOR A SECOND CAUSE OF ACTION
## PURSUANT TO USERRA AGAINST ALL DEFENDANTS

48.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 47 with the same force and effect as if fully set forth herein.

49.    Throughout the events cited herein, the individual Defendants, while acting under the color of law, subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the protections guaranteed under the Uniform Services Employment and Reemployment Act of 1994.

50.    Plaintiff has been denied benefits of employment secured under USERRA and has been subjected to retaliation for taking action to enforce her rights under USERRA.

51.    Because of the deprivation of these rights and the retaliatory actions by Defendants, Plaintiff has been damaged in her employment and has suffered emotional distress and conscious pain and suffering as a result of these action.

52.    The actions of Defendants, in depriving Plaintiff of her constitutional and civil rights, as herein before stated, were willful and malicious acts.

53.    As a result of the aforesaid wrongful, reckless and intentional acts of Defendants, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

54.     Based upon the foregoing, Plaintiff is entitled to punitive and exemplary damages in the sum of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR A THIRD CAUSE OF ACTION
## BASED UPON HOSTILE WORK ENVIRONMENT

55.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 54 with the same force and effect as if fully set forth herein.

56.     The Defendants intentionally and wrongfully discriminated against the Plaintiff in her employment and retaliated against her by creating a hostile work environment in violation of the Constitution of the United States and applicable statutes.

57.     Plaintiff's workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of Plaintiff's work environment, and cause humiliation to Plaintiff.

58.     Defendants knew or should have known that their actions were in violation of Plaintiff's civil rights.

59.     Defendants' harassments were severe and pervasive so as to alter the terms and conditions of Plaintiff's employment causing Plaintiff to be demoted, suffer loss of salary and related benefits and be subjected to unjust discipline.

60.     As a result, the Defendants' actions created an abusive working environment.

61.     The Defendants' conduct caused irreparable damage to the Plaintiff.

62.     As a result these negligent, wrongful, careless, reckless and intentional acts of the Defendants, Plaintiff suffered severe and extreme emotional distress and conscious pain and suffering.

63.     As a result of the Defendants' conduct, the Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00) and Punitive and Exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR A FOURTH CAUSE OF ACTION
## PURSUANT TO NEW YORK STATE EXECUTIVE LAW § 296

64.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 63 with the same force and effect as if fully set forth herein.

65.     Based on the foregoing, Defendants intentionally and willfully discriminated against Plaintiff in her employment based upon sex and disability, created a hostile working environment and retaliated against the Plaintiff because she engaged in protected activity in violation of New York State Executive Law § 296.

66.     Even though Defendants were aware of Plaintiff's complaints and the existence of a hostile work environment, no actions were taken by Defendants in an effort to correct the discriminatory conduct on behalf of the individual Defendants.

67.     Such conduct on the part of Defendants and all others, without cause of justification, violated the Plaintiff's civil rights guaranteed under the New York State Constitution and New York State Executive Law § 296.

68.     As a result of Defendants' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Executive Law § 296, Plaintiff has suffered economic loss, pain, humiliation and extreme emotional distress.

69.     As a result of the foregoing wrongful, careless and intentional acts of Defendants, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00). Additionally Plaintiff seeks punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR A FIFTH CAUSE OF ACTION
## PURSUANT TO NEW YORK CITY ADMINISTRATIVE
## CODE § 8-107 (1) ET. SEQ.

70.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 69 with the same force and effect as if fully set forth herein.

71.     Defendants discriminatory conduct based on Plaintiff's sex and disability, created a hostile working environment and retaliated against the Plaintiff because she engaged in protected activity in violation of  the New York City Administrative Code § 8-107(1), et. seq., and the New York City Human Rights Law.

72.     The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of Defendants.

73.     Because of the foregoing, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00). Additionally Plaintiff seeks punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR THE SIXTH CAUSE OF ACTION
## PURSUANT TO GENDER DISCRIMINATION IN VIOLATION
## OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1983

74.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 73 with the same force and effect as if fully set forth herein.

75.     Plaintiff alleges that Defendants through its agents engaged in a pattern and practice of discrimination against her with respect to the terms, conditions and privileges of employment because of the Plaintiff's gender in violation of 42 U.S.C. 1983.

76.     As part of its pattern and practice of employment discrimination, Defendants through its agents treated Plaintiff in a manner indicative of gender discrimination, with respect to its failure to take corrective action.

77.     Defendants knew or should have known about the gender discrimination in the workplace.

78.     Defendants failed and refused to take appropriate action to end the discriminatory treatment and conditions which Plaintiff was subjected to, which was clearly motivated by gender in a clear demonstration of bad faith.

79.     That as a result of the discriminatory acts of Defendants through its agents, Plaintiff suffered emotional distress.

80.     As a result of the acts of Defendants under color of law, Plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

81.     As a result of the foregoing wrongful, careless and intentional acts of Defendants, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00). Additionally Plaintiff seeks punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## PURSUANT TO RETALIATION IN VIOLATION OF THE
## CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1983

82.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 81 with the same force and effect as if fully set forth herein.

83.     Plaintiff alleges that Defendants through its agents engaged in retaliation against Plaintiff as a result of her complaining about the discriminatory treatment to NYPD OEO, in violation of 42 U.S.C. § 1983.

84.     That as a result of the discriminatory acts of Defendants through its agents, Plaintiff suffered emotional distress.

85.     As a result of the acts of Defendants under color of law, Plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

86.     As a result of the foregoing wrongful, careless and intentional acts of Defendants, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00). Additionally Plaintiff seeks punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## AS AND FOR THE EIGHTH CAUSE OF ACTION
## PURSUANT TO HOSTILE WORK ENVIRONMENT IN
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1983

87.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 86 with the same force and effect as if fully set forth herein.

88.     Plaintiff alleges that Defendants through its agents created and condoned a hostile work environment against Plaintiff in violation of 42 U.S.C. § 1983.

89.     That as a result of the discriminatory acts of Defendants through its agents, Plaintiff

suffered emotional distress.

90.     That as a result of the acts of Defendants under color of law, Plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

91.     As a result of the foregoing wrongful, careless and intentional acts of Defendants, Plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00). Additionally Plaintiff seeks punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## JURY TRIAL

Plaintiff requests a jury trial on all questions of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this honorable Court grant the following relief:

1.     Declare that the aforementioned actions of Defendants were unconstitutional and in violation of TITLE VII of the Civil Rights Act of 1964, as amended, USERRA, the New York State and New York City Human Rights Laws and Administrative Code;

2.     Declare that the aforementioned discriminatory actions of Defendants were in violation of New York State Executive Law § 296, New York City Human Rights Law, 42 USC § 1983, TITLE VII of the Civil Rights Act of 1964, as amended;

3.     Enjoin the Defendants and their successors, agents, servants, employees and those in active concert or participation with them from subjecting their employees to retaliatory and harassing conduct based on sex, disability and/or military status, creating a hostile working

environment and retaliation;

4.      As and for Plaintiff's First Cause of Action, grant Plaintiff the sum of FIVE MILLION DOLLARS ($5,000,000.00) along with punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

5.      As and for Plaintiff's Second Cause of Action, grant Plaintiff the sum of FIVE MILLION DOLLARS ($5,000,000.00) along with punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

6.      As and for Plaintiff's Third Cause of Action, grant Plaintiff the sum of FIVE MILLION DOLLARS ($5,000,000.00) along with punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

7.      As and for Plaintiff's Fourth Cause of Action, grant Plaintiff the sum of FIVE MILLION DOLLARS ($5,000,000.00) along with punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

8.      As and for Plaintiff's Fifth Cause of Action, grant Plaintiff the sum of FIVE MILLION DOLLARS ($5,000,000.00) along with punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

9.      As and for Plaintiff's Sixth Cause of Action, grant Plaintiff the sum of FIVE MILLION DOLLARS ($5,000,000.00) along with punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

10.     As and for Plaintiff's Seventh Cause of Action, grant Plaintiff the sum of FIVE MILLION DOLLARS ($5,000,000.00) along with punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

11.     As and for Plaintiff's Eighth Cause of Action, grant Plaintiff the sum of FIVE

MILLION DOLLARS ($5,000,000.00) along with punitive and exemplary damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00);

    12.    Grant Plaintiff all costs for this action, including reasonable attorney's fees; and

    13.    Grant Plaintiff such other and further relief as this Court may seem just and proper.

Dated: August 29, 2012
       Lake Success, New York

                Yours etc.,

                CRONIN & BYCZEK, LLP

                Susan P. Bernstein (SB6399)
                Attorneys for Plaintiff
                1983 Marcus Avenue, Suite C-120
                Lake Success, New York  11042
                (516) 358-1700